Griffin *vs.* Stamper and another.

No. 23.—JOHN B. GRIFFIN, plaintiff in error, *vs.* MARTIN J. STAMPER and another, defendants in error.

[1.] A party deriving title under a forged bond, may show the instrument void, in order to avoid the disadvantage of being considered, in law, as holding under the obligor.

[2.] A bond, though forged, on the part of the fictitious obligor, if accepted, nevertheless, as *bona fide* by the obligee and those claiming under him, and without knowledge of the fraud, gives a color of title, under the Statute of Limitations.

Ejectment, in Talbot Superior Court. Tried before Judge CRAWFORD, September Term, 1854.

The lot of land in dispute was granted, in 1838, to Daniel Zetler, who, in 1847, conveyed it to Martin J. Stamper. The suit was brought on the several demises of Zetler and Stamper, against John B. Griffin, tenant. The defendant relied on the Statute of Limitations, and proved, that in 1836, one Morris purchased the lot of a man calling himself Daniel Zetler—gave his note and took a bond for titles, to be executed 25th December, 1837. Morris afterwards transferred the bond to Rush, who went into possession. Several intermediate conveyances brought the title to Griffin, and possession had been had for more than seven years.

. Defendant proposed to prove by one Neidlinger, that he was acquainted with Zetler's hand-writing, and that the signature to the bond was a forgery. Also, a description of Zetler, showing him to be a different man from the one who gave Morris the bond for titles. The Court rejected the evidence as irrelevant, and defendant excepted.

WELLBORN & CLARK, for plaintiff in error.

B. HILL and J. JOHNSON, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] Ought the defendant to have been allowed to show that

Zetler's bond was a forgery, or that it was made by a fictitious obligor, personating Zetler ?

When this case was last before this Court, (11 *Ga. Rep.* 636,) we held that the bond for titles, purporting to have been made by Zetler to Morris, and which had been transferred, through several intermediate persons, to the defendants or those under whom they claimed, could not be relied on as color of title, as against Zetler, because the purchase money had not been paid. And now the defendant, to relieve himself from the effect of this decision, proposes to prove that Zetler never executed the bond, and consequently, can claim nothing or derive no aid to his title under it; that these defendants never attorned to him or recognized the paramount title to the premises in dispute to be in him; that he is, upon the principle of the case of *Fain vs. Garthright,* (5 *Ga. R.* 6,) a third person, both as to them and this bond.

[2.] Mr. Zetler, the grantee from the State, saw persons in the possession of his land, openly, notoriously and adversely. He knew he had never conveyed it to any body; that the persons in the occupancy were not his tenants, actually or constructively. He was an outsider, as to this possession. Nothing could be inferred from it in his favor. Why did he sleep, for seven years and more, over his rights, without instituting any inquiry into the character of the claim and possession of which he was thus, in legal contemplation, notified ?

Very well, say the defendants in error, if the bond from Zetler was spurious, you can take nothing under it. Why not ? If Morris acted *bona fide*—if he believed that the obligor was Daniel Zetler, unless we are prepared to disown the doctrine repeatedly ruled by this Court, and every other in the Union, that a void grant, deed or bond, may nevertheless be good as color of title, then the defendants in ejectment, claiming, as they do, under Morris, are entitled to be protected, notwithstanding this bond be a forgery. It was clearly admissible, to show the *quo animo* with which Morris purchased, under whom the defendants in ejectment hold. In other words, paradoxical as it may seem to us, it is plain that it was allowable to

show the bond void, for one purpose, and good, or supposed to be so, at least, by Morris, the vendee, for another, viz: as color of title, to protect his possession.    And we see nothing inconsistent in the two propositions.

Whenever the doctrine is advanced, that a void deed is good, to give color of title, under the Statute of Limitations, I have perceived, or thought I did, something like a withholding of assent on the minds of some.   I confess myself surprised at this.   The rule has gone much further; and in *Gregg vs. Sayre,* (8 *Peter's U. S. Rep.* 244,) the Supreme Court of the United States held, and very properly, both upon principle and authority, that even if the grantor in deeds be justly chargeable with fraud, but the grantees did not participate in it; and when they received their deeds, had no knowledge of it, but accepted the same in good faith, the deeds, upon their face, purporting to convey a title in fee, and showing the nature and extent of the premises, the Court say there can be no doubt the deeds do give color of title, under the Statute of Limitations.   See, also, 6 *Cowen's R.* 623.

And this is precisely the case at bar, in the second aspect taken of it.

And why, I ask, should this not be so?   Suppose the deed be fatally defective, or even fraudulent, on the part of the grantor, and still the grantee, as owner, *bona fide* claiming, and believing himself to be such, should not possession, under such a title, be considered adverse?   How can it be said that such a one holds in subordination to the legal owner?