S11A1551. WASHINGTON et al. v. BROWN et al.

(722 SE2d 65)

MELTON, Justice.

In 1962, Joseph Washington purchased 1.735 acres of land in rural McIntosh County where he and his wife live today. In 1976, Joan Brown (Washington's sister) purchased property next to him, claiming 4.49 acres of land. Brown began building a house on her property in 1982, and moved into it in 1983. A dispute arose between

Washington and Brown when, in 2002, Brown commissioned a survey of her property, and the survey showed an area of overlap between Washington's property and her own. Both parties claimed that the area of overlap was included in their respective deeds. In 2003, Washington and his wife filed a quiet title action pursuant to OCGA § 23-3-62[1] in the Superior Court of McIntosh County seeking to establish they had legal title to the disputed land. Brown counterclaimed with her own quiet title action, seeking to establish that she was the rightful owner. The court appointed a Special Master, who concluded that Brown was the rightful owner. The Washingtons then challenged the Special Master's ruling in the McIntosh County Superior Court. In 2009, following a hearing, the trial court entered an order that incorporated the Report of the Special Master and ruled in favor of Brown. The Washingtons appeal from this ruling.

As explained more fully below, because there is no evidence to support the conclusion that Brown owns the disputed property either by deed or by adverse possession, we must reverse that portion of the trial court's order awarding the disputed property to Brown. However, because evidence does support the trial court's conclusion that the Washingtons also do not own the disputed property, that portion of the order determining that the Washingtons do not own the disputed property must be upheld on appeal. We therefore affirm in part and reverse in part.

"[I]n an action to quiet title brought under OCGA § 23-3-60 et seq., the findings of the Special Master and adopted by the trial court will be upheld unless clearly erroneous." (Citations omitted.) *Seignious v. Metropolitan Atlanta Rapid Transit Authority*, 252 Ga. 69, 71 (311 SE2d 808) (1984). The trial court's judgment will not be disturbed on appeal if there is any evidence to support it. *Nebb v. Butler*, 257 Ga. 145 (357 SE2d 257) (1987).

Here, there is no evidence to support the conclusion that Brown owned the disputed property. To prove her alleged ownership of the disputed property, Brown presented evidence of a March 1, 1976 warranty deed and a 1975 survey that was filed and recorded with the deed (but that was not referenced by the deed). However, it is undisputed that the legal description of the property contained in Brown's deed does not include the disputed property. As such, she could not be the owner of this disputed property by deed, nor could she claim to have held color of title to the property through this deed.[2] See *Luttrell v. Whitehead*, 121 Ga. 699 (1) (49

---

[1] OCGA § 23-3-62 (a) provides that "[t]he proceeding in rem shall be instituted by filing a petition in the superior court of the county in which the land is situated."

[2] In this connection, the Special Master also found that a previously recorded deed presented by the Washingtons neither conveyed actual title nor color of title to the disputed

SE 691) (1905). Indeed,

> the description in a deed to realty introduced as color of title will not be extended beyond its terms because of a belief by the holder under it that it covered land not embraced in that description, nor because of any unexpressed intention in the mind of the grantor that it should cover land not described in the deed itself.

(Citation and punctuation omitted). Id. at 702 (1). The fact that a plat was filed with Brown's 1976 deed does not change the result, as the filing of a plat does nothing to change the actual legal description of property contained within a deed itself. See, e.g., *Johnson v. Willingham*, 212 Ga. 310, 311 (1) (92 SE2d 1) (1956) (even where deed specifically references plat filed therewith, when description of land in deed differs from description contained in the plat, the "description contained in the deed will prevail over the description shown by the plat where there is a difference in the two"). At most, the plat filed with the deed here would only represent evidence that Brown was led to believe that the deed "covered land not embraced in [the legal] description" contained in the deed. *Luttrell*, supra, 121 Ga. at 702 (1). Again, this is insufficient as a matter of law to show that Brown could make any claim to the disputed property — even under color of title. Id. Accordingly, Brown cannot successfully claim title by deed to the disputed property or prescriptive title to the property by adverse possession under color of title for seven years. Instead, she is relegated to a claim of prescriptive title by adverse possession for twenty years. OCGA §§ 44-5-163 and 44-5-164.

Pretermitting the question whether Brown presented sufficient evidence to support the other elements of adverse possession, the evidence of record shows that, at most, Brown made a claim to the disputed property for only eighteen years before being challenged by the Washingtons. Thus, her claim to have gained prescriptive title to

property to the Washingtons, as the deed itself was void for insufficiency of the legal description of the land purportedly conveyed therein. This ruling was correct. The description in the Washingtons' deed described the beginning point of their property as "the intersection of a dirt road and the Southwest boundary of the lands formerly of [the common ancestor from whom both the Washingtons and Brown received their respective properties]." However, the evidence revealed that at least three "dirt roads" existed at the time that the deed was executed that could have been the "dirt road" referenced in the legal description, making it impossible to determine the exact beginning point of the Washingtons' property. See, e.g., *Gould v. Gould*, 194 Ga. 132 (21 SE2d 64) (1942) (where deed described beginning point of property as "an oak tree at a point above 'Elion Landing' on Dunbar's Creek," and Court could not determine " 'at what oak tree,' 'how far above [Elion Landing],' etc.," the property began, the deed's "weakness in respect to defining the beginning point on locating the boundaries [of the property was], in [the Court's] opinion, fatal.").

the property through adverse possession fails as a matter of law.[3] See, e.g., *Gurley v. East Atlanta Land Co.*, 276 Ga. 749, 751 (2) (583 SE2d 866) (2003) (claim for prescriptive title failed as a matter of law where there was "no showing of uninterrupted and continuous possession for the requisite 20 years") (citation omitted).

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED FEBRUARY 6, 2012.

*Adam S. Poppell III*, for appellants.

*Joseph H. Ferrier, James W. Smith, Crystal R. Ferrier*, for appellees.

---

[3] This does not mean, however, that the Washingtons own the disputed property. Indeed, the evidence presented below does support the trial court's conclusion that the Washingtons' occasional maintenance and use of the disputed property did not amount to the type of exclusive possession for twenty years that would support a claim for prescriptive title. See OCGA §§ 44-5-161; 44-5-165 ("Actual possession of lands may be evidenced by enclosure, cultivation, or any use and occupation of the lands which is *so notorious as to attract the attention of every adverse claimant and so exclusive as to prevent actual occupation by another*") (emphasis supplied). We therefore will not disturb that finding here.